# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA**

v.           Case No. 8:15-CR-336-T-35JSS

**EULALIO ALARCON PRADO**
_____/

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW, the Defendant, EULALION ALARCON PRADO, by and through undersigned counsel, and files this sentencing memorandum in support of a sentence below the advisory guideline. Mr. Alarcon-Prado moves this Court for the imposition of a reasonable sentence which is no greater than necessary to comply with the purposes of sentencing enumerated in 18 U.S.C. § 3553(a)(2). As grounds in support of this motion, Mr. Alarcon-Prado states the following:

### I. MR. ALARCON-PRADO'S BACKGROUND[1]

Mr. Alarcon-Prado is a 46 year old (March 12, 1970) native of Eloy Alfaro, Ecuador.[2]

 

---

[1] Background information is taken from the Presentence Report ("PSR") and interviews with Mr. Alarcon-Prado.

[2] The Photos above were taken from the internet to show the area of Eloy Alfaro [in orange], Ecuador.

Mr. Alarcon-Prado grew up in extremely impoverished home, that lacked water, electricity and plumbing. He described his family as loving and hard-working, and his conduct in this offense does not reflect the good morals and values instilled upon him at an early age. *See* Attached letter from Mr. Alarcon-Prado. Mr. Alarcon-Prado began working when he was only 7 years old, so that he could help his family financially, and as a result, he was unable to complete his education. As the oldest son, Mr. Alarcon-Prado was dedicated to his family, and worked along-side his father as a fisherman, and felt great pride in the honest, yet meager earnings he provided his family.

Mr. Alarcon-Prado eventually began a family of his own, but continued to help out his parents and siblings as much as he could. When his first wife abandoned him and their two daughters, he was devastated, but he worked even harder to provide the best life he could for them. He eventually remarried and had a son, and most recently another daughter. His wife was pregnant when he left Ecuador, and he has not seen his new daughter, and longs to hold her in his arms. Mr. Alarcon-Prado is a loving and supportive husband and father, and the separation from his family is the worst punishment he could have ever imagined.

Mr. Alarcon-Prado is in good health, but he worries about his wife because she has diabetes and is unable to work. His parents are both in their 80's, and both have health problems that could be life-threatening due to their age. He hopes to see his parents before they pass away. Mr. Alarcon-Prado drinks occasionally, but has never

used illegal drugs, and other than his depression from being away from his family, he does not suffer from any mental or emotional conditions.

## II. PROCEDURAL HISTORY AND GUIDELINE CALCULATIONS

On August 26, 2015, the grand jury in the Middle District of Florida returned indictment charging Mr. Alarcon-Prado, and three other co-defendants with two-count Indictment – Conspiracy to Possess with the Intent to Distribute 5 kilograms or more of Cocaine, in violation of 46 U.S.C. §§ 70503 (a) and 70506(a) and 21 U.S.C. § 960 (b)(1)(B)(ii).

On October 29, 1015, Mr. Alarcon-Prado pled guilty to Count 1, pursuant to a plea agreement, and the Court accepted his plea of guilty and adjudication of guilt on November 16, 2015.

The probation officer correctly calculated Mr. Alarcon-Prado's advisory guideline range. PSR ¶¶19-29.[3] With an offense level of 35, and a criminal history category I, Mr. Alarcon-Prado's guideline imprisonment range is **14 years – 17 years, 6 months**.

## III. MINOR ROLE

Mr. Alarcon-Prado should receive a two-level reduction for minor role. Mr. Alarcon-Prado's role in this case was simply as a courier of the cocaine. He was not a leader or organizer, and had no proprietary interest in the operation – he was paid only to transport the cocaine.

---

[3] Mr. Alarcon-Prado accepted responsibility as master of the vessel when questioned by

The seminal Eleventh Circuit case dealing with the determination of a mitigating role reduction pursuant to U.S.S.G. §3B1.2 is *United States v. Rodriguez De Varon*, 175 F.3d 930 (11th Cir. 1999). In the *De Varon* case, the Eleventh Circuit established a two-part test for determining whether a defendant qualifies for a minor role reduction. *De Varon*, 175 F.3d at 934. As the Eleventh Circuit noted, "[f]irst, and foremost, the district court must measure the defendant's role against [his] relevant conduct, that is, the conduct for which [he] has been held accountable under U.S.S.G. §1B1.3." *Id*. The Eleventh Circuit further stated the second part of the test requires that "where the record evidence is sufficient, the district court may also measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant." *Id*.

The guideline involved in the issue of minor role is U.S.S.G. §3B1.2; the new amendment to it is a more inclusive guideline provision for individuals like Mr. Alarcon-Prado. The pertinent changes appear not in the text of § 3B1.2 itself, but rather in the commentary of Application Note 3(C), which instructs sentencing courts to apply a fact-based determination in deciding whether the mitigating adjustment should be -4 levels (a "minimal" role), -2 levels (a "minor" role), or -3 levels (roles falling between minor and minimal). Specifically, the Commission has added text setting forth a non-exclusive list of factors to examine, including: the defendant's understanding of the scope and structure of the crime; the degree of the

---

authorities, but notes that each of the co-defendants took turns navigating the boat.

defendant's participation in planning or organizing the crime; the extent to which the defendant exercised or influenced decision-making authority; the nature and extent of the defendant's participation in the offense itself; and the degree to which the defendant stood to benefit from the unlawful activity. Significantly, Application Note 3(C) advises sentencing courts that merely because "a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in this criminal activity." This language was added in specific response to cases that concluded a defendant's indispensable role was incompatible with a mitigating role adjustment. *See*, e.g., *United States v. Skinner*, 690 F.3d 772, 873-84 (6th Cir. 2012) (holding that a "defendant who plays a lesser role in a criminal scheme may nonetheless fail to qualify as a minor participant if his role was indispensable or critical to the success of the scheme").

      The purpose of the mitigating role adjustment is to ensure that a low-level participant in a conspiracy does not receive the same sentence as a high-level participant in a conspiracy. Otherwise, based on the fact that all of the defendants in a conspiracy are held accountable for the total quantity of drugs involved, non-similarly situated defendants would be receiving the same sentence despite the minor role that some of the defendants may have had. Since, Mr. Alarcon-Prado is being held for an amount of cocaine that places him at the same offense level as

the owners, and those charged with logistics, his role must be compared to all of the other participants of the group of individuals.

In the present case, the factors weigh in favor of Mr. Alarcon-Prado's minor role status. Factually, Mr. Alarcon-Prado was paid by others in the conspiracy. Mr. Alarcon-Prado had no equity interest in the drugs. He had no role in planning the criminal scheme and absolutely no role in the ultimate distribution of the cocaine. Other factors supporting Mr. Alarcon-Prado's minor role status include the fact that he did not recruit any other participants, he had little knowledge of the scope of the broader conspiracy, he reported to a larger player in the conspiracy. Distinctly, no one reported to him. Clearly under these facts, Mr. Alarcon-Prado was less culpable than most of the participants. Specifically, he was less culpable than the loaders, the logistics people, the distributors, the purchaser of the cocaine, the seller of the cocaine or any other unindicted co-conspirators. He was essentially a mule on a boat.

Based on the forgoing argument and legal authority, Mr. Alarcon-Prado's objections should be granted and he should receive a two-level reduction for minor role. Such a result will be consistent with one of the main goals of the guidelines by insuring that (absent the mandatory ten year sentence) he does not receive the same sentence as individuals that are more culpable than him, thus running astray of the guiding goal that similarly-situated defendants should be

punished similarly.

## IV. REQUEST FOR A REASONABLE SENTENCE

Mr. Alarcon-Prado respectfully requests that this Court impose a sentence below the advisory guideline range, as "sufficient but not greater than necessary" to accomplish the purposes of sentencing. The Sentencing Guidelines are now, of course, advisory. *United States v. Booker*, 543 U.S. 220 (2005). Thus, although the recommended guideline range must be taken into account, this Court must follow the "parsimony provision" of 18 U.S.C. § 3553(a), which is the "overarching" command of the statute. *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558, 570 (2007). That provision provides that this Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of [§ 3553(a)]." Those purposes set forth in paragraph 2, are: "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

### A. The Nature and Circumstances of the Offense and the History and Characteristics of Mr. Alarcon-Prado [18 U.S.C. § 3553(a)(1)]

The history and characteristics of Mr. Alarcon-Prado, as well as the facts and circumstances of this case would justify a departure/variance. Mr. Alarcon-Prado is a 45 year old man, who always led an honest and hard-working life. He was vulnerable because of his lack of education and lack of financial means. Like many others in his country, he was struggling to make ends meet. His involvement in criminal conduct began when he was in desperate need to purchase diabetes medication for his wife. Mr. Alarcon-Prado was offered a job by an individual he had frequently encountered at the dock. He knew the job involved transporting cocaine, and he was offered $3,000 for his assistance. Against his better judgment, Mr. Alarcon-Prado took the job – not in greed, but because of his desire to restore his wife's health, and help his family live a better life.

### B. To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense [18 U.S.C. §3553(a)(2)(A)]

Mr. Alarcon-Prado has accepted responsibility for his actions, and acknowledged that his behavior was wrong. He related that he did not truly understand the consequences of his actions until he arrived in the United States, sat in jail, and had an opportunity to reflect on his actions. Mr. Alarcon-Prado is

already thinking about ways he can make a better life for himself and his family. He is committed to using the time he is incarcerated to learn to further his education. He would also like to learn a trade that could help improve his chances of employment once he is returned to his country. Prisons are good for punishing, and Mr. Alarcon-Prado understands the need for punishment; however, he is a first time offender, is not violent and will eventually be returned to his country. For Mr. Alarcon-Prado, the punitive purpose of sentencing can be achieved with a below-range sentence.

## **CONCLUSION**

After consideration of the factors enumerated in 18 U.S.C. § 3553(a), this Court should find that a sentence below the advisory guideline range is "sufficient but not greater than necessary to achieve the purposes of sentencing." Mr. Alarcon-Prado requests that a sentence at the statutory minimum is more than reasonable in this case.

DATED this 5th day of March, 2016.

                                          Respectfully submitted,

                                          DONNA LEE LEM
                                          FEDERAL DEFENDER

                                          */s/ Yvette C. Gray*
                                          Yvette C. Gray
                                          Bar No. 016516 (Arizona)

Assistant Federal Defender
400 N. Tampa Street, Suite 2700
Tampa, Florida 33602
Phone: (813)228-2715
Fax: (813)228-2562
Email: Yvette_Gray@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of March, 2016, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to the following:

Walter E. Furr III, AUSA

*/s/ Yvette C. Gray*
Yvette C. Gray
Assistant Federal Defender